UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CECIL C.,[1]

    Plaintiff,

v.

FRANK BISIGNANO,[2]

    Defendant.

Case No. 24-cv-09473-SK

**AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Regarding Docket Nos. 10, 11

This matter comes before the Court upon consideration of Plaintiff Cecil C.'s motion for summary judgment and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c), and both parties have consented to the jurisdiction of a magistrate judge. (Dkt. Nos. 6, 7.) Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, relevant legal authority, and the record in the case, the Court hereby DENIES Plaintiff's motion and GRANTS the Commissioner's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff was born on September 26, 1983. (Administrative Record ("AR") 130, 347.) Plaintiff previously received disability benefits from May 25, 2007 to July 1, 2017. (AR 99.) In a March 20, 2020 decision, the Social Security Administration determined that Plaintiff was no

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this action.

longer disabled, and that he had not been disabled since July 1, 2017.  (*Id.*)

On September 30, 2021, Plaintiff filed a new application for disability benefits, alleging that he was disabled beginning September 4, 2012.  (AR 342, 344.)  On October 6, 2021, (AR 340), and January 8, 2022, (AR 349), Plaintiff filed claims for supplemental social security income.

On September 12, 2023, Plaintiff, accompanied by Plaintiff's former representative, Abigail Riley, testified at a hearing before the Administrative Law Judge ("ALJ").  (AR 70.)  A vocational expert also testified at the hearing.

The ALJ found that Plaintiff could not assert that he was disabled prior to March 20, 2021—the date of the prior decision finding Plaintiff nondisabled.  (AR 48 (citing *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988)).)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2021, the date of the disability application.  (AR 51.)  The ALJ further determined that Plaintiff has several severe impairments, including chronic pain syndrome, mild right hip degenerative arthritis, right side sciatica, major depressive disorder, unspecified bipolar and related disorder, generalized anxiety disorder, and post-traumatic stress disorder.  (*Id.*)  However, the ALJ found Plaintiff's obesity non-severe because "the evidence fails to indicate any significant findings related to the claimant's obesity, alone or in combination with his other impairments, suggesting it results in no more than minimal limitation in the ability to perform basic work activities."  (*Id.*)  The ALJ also rejected Plaintiff's contention that chronic back pain and rule-out substance induced mood disorder were severe impairments, finding that these complaints were not established by the evidence as medically determinable impairments. (*Id.*)

The ALJ then found that Plaintiff does not have a listed impairment or medically equivalent impairment, (*id.*), and that Plaintiff retained the following residual functional capacity ("RFC"): "can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 2 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can occasionally stoop, kneel, crouch, and crawl; [and] can perform low stress work . . . ."  (AR 53.)  The ALJ defined low stress work to involve "simple work-related decisions," occasional workplace

changes, and occasional interaction with the public. (*Id.*) Relying on this RFC and considering Plaintiff's age, education, and work experience, the ALJ concluded that Plaintiff "is not disabled under section 1614(a)(3)(A) of the Social Security Act." (AR 60-61.)

Plaintiff contends that the ALJ erred in assessing the severity of Plaintiff's obesity and chronic back pain, evaluating Plaintiff's subjective symptom testimony, considering the persuasiveness of the medical opinions, and determining Plaintiff's RFC. (Dkt. No. 10.)

## ANALYSIS

### A. Standard of Review.

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

### B. Legal Standard for Establishing a Prima Facie Case for Disability.

Disability is the "inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in

substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(g). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* at 404.1520(e) and (g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. *Id.*

**C. Whether an Impairment is Severe at Step Two.**

Under step two, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 916.922. Additionally, under the second step, an impairment must last, or be expected to last, for at least twelve months. 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii). Importantly, an impairment must be established by objective medical evidence (medical signs, laboratory findings, or both) from an acceptable medical source and cannot be established based on a claimant's symptoms alone. 20 C.F.R. §§ 416.913; 416.921; *see also* 20 C.F.R. § 404.1521

4

1   ("[I]mpairment(s) must result from anatomical, physiological, or psychological abnormalities that

2   can be shown by medically acceptable clinical and laboratory diagnostic techniques. . . . We will

3   not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of

4   an impairment(s).").

5       The step-two inquiry has been defined as "a de minimis screening device to dispose of

6   groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996.)  A medical impairment

7   "can be found 'not severe' only if the evidence establishes a slight abnormality that has no more

8   than a minimal effect on an individuals [sic] ability to work." *Id*.  Nevertheless, a plaintiff must

9   still meet his burden to show "that he suffers from a medically determinable impairment" and

10  "that these impairments or their symptoms affect his ability to perform basic work activities."

11  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (citing Soc. Sec. Rulings 96-3p and

12  96-7p); *see also Hurter v. Astrue*, 465 Fed.Appx. 648, 650 (9th Cir. 2012) (plaintiff "had the

13  burden of proving that her impairments affected her ability to perform basic work activities").  If

14  "there is no allegation of a physical or mental limitation or restriction of a specific functional

15  capacity, and no information in the case record that there is such a limitation or restriction," then

16  the ALJ "must consider the individual to have no limitation or restriction with respect to that

17  functional capacity."  Soc. Sec. Ruling 96-8p.  Additionally, when claimants are successfully

18  treated with over-the-counter medication and other conservative treatment, an impairment is not

19  severe.  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

20      **1.      Obesity**

21      The ALJ noted Plaintiff's consistent record of obesity but reasoned that "the evidence fails

22  to indicate any significant findings related to [Plaintiff's] obesity, alone or in combination with his

23  other impairments, suggesting it results in no more than minimal limitation in the ability to

24  perform basic work activities."  (AR 51.)  The ALJ then pointed to Plaintiff's ability "to perform

25  basic household chores, generally care for his own personal hygiene, walk/hike, and take public

26  transportation" to conclude "that the claimant's obesity is non-severe."  (*Id.* (citing AR 429-35,

27  990, 718).)

28      Plaintiff contends that the ALJ erred in finding obesity a non-severe impairment at step

two.  (Dkt. No. 10, p. 8-10.)  Plaintiff argues for a finding of severity because: (1) providers "indicated symptoms such as gait abnormalities, chronic back, hip, and neck pain, [and] arthritis"—"the sort of symptoms exacerbated by obesity per [SSR 19-2p]"—in the same records where obesity was noted, (Dkt. No. 10, p. 9 (citing AR 603, 616; AR 719-29; AR 909); (2) "the clinicians regularly provided nutrition counseling, indicating that they did not consider Plaintiff's obesity as non-severe," (*Id.* (citing AR 584, 586; AR 732-34)); and (3) the ALJ is instructed by SSR 19-2p to "take into account the **fact that obesity increases musculoskeletal pain** . . . ," (Dkt. No. 12, p. 2-3).

Obesity is a severe impairment where it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." SSR 19-2p.  Courts have repeatedly upheld ALJs' decisions to consider obesity non-severe where the record does not contain any evidence of functional limitations caused by obesity.  *See Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005) (finding the ALJ did not err at step two for failing to consider obesity where the plaintiff had "not pointed to any evidence of functional limitations due to obesity"); *see also Shorter v. Saul,* 777 Fed.Appx. 209, 211 (9th Cir. 2019) ("The Administrative Law Judge (ALJ) reasonably concluded that obesity was not a severe impairment because no medical evidence showed any functional limitations associated with obesity.").

Here, Plaintiff does not point to any support in the record that his obesity has limited or restricted his functional capacity.  Instead, Plaintiff points to records where providers independently noted both Plaintiff's obesity and other symptoms.  (Dkt. No. 10, p. 9 (citing AR 603, 616; AR 719-29; AR 909).)  However, none of these providers noted a causal link between obesity and any other symptom, nor did they opine that Plaintiff's obesity prevents or limits his functioning.  Plaintiff also points to evidence that providers offered him nutritional counseling, (*id.* (citing AR 584, 586; AR 732-34)), but nutritional counseling is not evidence of a functional limitation.  Notably, Plaintiff himself did not allege limitations caused by his obesity in his disability report.  (*See* AR 371 (listing depression, bipolar, pins in both legs, trouble doing tasks, trouble standing and walking, and asthma as physical and mental conditions limiting Plaintiff's ability to work).)  Nor did he testify about limitations associated with obesity at the administrative

6

hearing with the ALJ. (*See* AR 74-75 (claiming Plaintiff's inability to work is due to his leg and back pain, curved spine, bipolar disorder, deep depression, and anxiety).) Finally, Plaintiff contends that the ALJ "ignore[d] SSR 19-2p." (Dkt. No. 12, p. 2.) The Court disagrees, given the ALJ's explicit consideration of obesity at step two. (AR 51.)

In conclusion, the ALJ did not err in finding obesity to be a non-severe impairment.

### 2.     **Chronic Back Pain**

The ALJ cited the lack of evidence establishing Plaintiff's alleged chronic back pain as a medically determinable impairment. (AR 51.) Plaintiff argues that the ALJ erred in finding chronic back pain is not a severe impairment. (Dkt. No. 10, p. 10.)

A claimant who alleges disability based on subjective symptoms "(1) [] must produce objective medical evidence of an impairment or impairments; and (2) [] must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1283. Under the second prong, the claimant must produce some evidence of a reasonable inference of causation, but he is not required to produce scientific studies or other evidence that the impairment would make pain inevitable. *Id.* at 1283. For example, in *Smolen*, the Ninth Circuit held that physicians' opinions stating that the claimant's medical impairment could reasonably be expected to have caused her alleged symptoms were sufficient to establish a causal relationship. *Id.*

Here, Plaintiff alleges that the ALJ erred in finding no medically determinable impairment for his chronic back pain because his "history of hip displacement and surgery and the subsequent degeneration of his hips, combined with his obesity" could reasonably produce his symptoms. (Dkt. No. 10, p. 11.) However, unlike in *Smolen*, where the plaintiff could point to her physicians' opinions establishing possible causation, Plaintiff fails to provide any evidence from the record that to show that the ALJ was wrong in failing to reasonably conclude Plaintiff's hip impairment caused his chronic back pain. (AR 74.)

Even if the ALJ erred in finding Plaintiff's chronic back pain to be non-severe, Plaintiff fails to show harmful error. A court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citation

1  omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  A finding of non-severity is
2  harmless where the ALJ extensively discusses any associated limitations to the impairment at step
3  four.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

4  Here, the ALJ extensively discussed limitations imposed by Plaintiff's back pain at step
5  four, citing his medical history and reported symptoms, (AR 55 (citing AR 97, 718, 963); AR 56
6  (citing AR 960, 963)), treatment records, (AR 55 (citing AR 719, 900); AR 56 (AR 959, 964)),
7  aggravating factors, (AR 56 (citing AR 963)), and a consultative medical evaluation considering
8  Plaintiff's low back pain, (AR 55 (citing AR 947-50)).  Therefore, any error in finding Plaintiff's
9  chronic back pain non-severe is harmless.

10 In conclusion, the ALJ did not err in finding chronic back pain to be a non-severe
11 impairment, but even if he did, any such error is harmless.

12 **D. Plaintiff's Credibility Assessment.**

13 "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical
14 testimony, and for resolving ambiguities."  *Reddick*, 157 F.3d at 722.  "The ALJ's findings,
15 however, must be supported by specific, cogent reasons."  *Id.*  In evaluating the credibility of a
16 claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis.  *Molina*,
17 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)).

18 First, the ALJ must determine if there is "objective medical evidence of an underlying
19 impairment which could reasonably be expected to produce the pain or other symptoms alleged."
20 *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "Once the claimant
21 produces medical evidence of an underlying impairment, the Commissioner may not discredit the
22 claimant's testimony as to subjective symptoms merely because they are unsupported by objective
23 evidence."  *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

24 Second, if there is no evidence of malingering, "the ALJ can reject the claimant's
25 testimony about the severity of her symptoms only by offering specific, clear and convincing
26 reasons for doing so."  *Lingenfelter*, 504 F.3d at 1036 (citation omitted).  "General findings are
27 insufficient; rather, the ALJ must identify what testimony is not credible and what evidence
28 undermines the claimant's complaints."  *Berry*, 622 F.3d at 1234 (citation omitted).  The ALJ is

permitted to consider a number of factors including: (1) inconsistencies in the record concerning Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of treating and examining physicians and other third parties. *See Smolen*, 80 F.3d at 1284. If the ALJ supports his credibility determination with substantial evidence in the record, the Court may not "second-guess that decision." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

### 1. Hip and Back Pain.

The ALJ recounted Plaintiff's subjective symptoms testimony in his decision. (AR 54.) Plaintiff testified that he has back and leg pain that render him unable to work. (*Id.*) Plaintiff explained that his pain generally renders him unable to move on a monthly to weekly basis, but can be as frequent as every other day. (*Id.*) He can lift and carry 40 to 50 pounds inconsistently, and 15 to 20 pounds more consistently. (*Id.*) Walking can be a problem every couple of months to every week. (*Id.*) He reported needing to shift his weight if he is standing in line and sometimes needs a cane. (*Id.*) He takes pain medication. (*Id.*)

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 54.) The ALJ reasoned that "the claimant's statements . . . are inconsistent because the evidence as a whole indicates that, despite his impairments, the claimant can perform a range of sedentary work with the nonexertional limitations set forth in the residual functional capacity finding above." (*Id.*) As to hip pain, the ALJ noted that although Plaintiff had a history of hip surgeries and walked with a limp, the medical evidence showed only mild right hip degenerative arthritis, 5/5 muscle power, and normal sensation. (AR 55-56.) In addition, Plaintiff reported that his pain improved with treatment (heat, massage, and chiropractic adjustment). (*Id.*) Similarly, although Plaintiff complained of low back pain and some (but not all) examinations found limited range of motion, his examination findings noted only limited tenderness, 5/5 strength, grossly intact sensation and neurology, and

9

responsiveness to treatment (a Toradol injection, exercising, stretching).  (*Id.*)  The ALJ also reasoned that "the claimant's daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (AR 58.)   The ALJ noted that Plaintiff can walk 15-30 minutes to the grocery store, hikes, goes on vacation, provides for his own hygiene, performs household chores, makes simple microwave meals, take public transportations, attends appointments, and takes care of his disabled mother and sister.  (*Id.*)

Plaintiff argues that the ALJ erred by "improperly focus[ing] on the need for objective evidence," not discussing whether Plaintiff's obesity might exacerbate his experience of pain, and "selectively" considering Plaintiff's daily activities.  (Dkt. No. 10, pp. 12-13.)  Plaintiff also cites to evidence that he had surgical scars, tenderness, a limp, reduced range of motion, inability to do toe-heel walking, and pain with flexion.  (*Id.*)  In addition, Plaintiff argues that the ALJ erred in citing evidence of medical improvement because Plaintiff's symptoms wax and wane.  (*Id.*)

The ALJ offered specific, clear and convincing reasons for discounting Plaintiff's complaints regarding his symptoms.  *See Nadon v. Bisignano*, __F.4th__, 2025 WL 2089066, at *4 (9th Cir. July 25, 2025) (finding that ALJ provided specific, clear, and convincing reasons for discounting testimony where the "ALJ summarized [the plaintiff's] testimony about her limitations and identified inconsistencies, including [the plaintiff's] own assertions about her daily and work activities that indicated she was 'not as limited as one would expect from an individual alleging disability.'").  Notably, the ALJ considered the mild clinical findings regarding Plaintiff's limitations, evidence of improvement with conservative treatment, and Plaintiff's daily activities suggesting his pain is not debilitating.  (AR 54, 58.); *See Nadon*, 2025 WL 2089066, at *4 (finding daily activities—including handling personal care, performing household chores, going camping, and caring for others as a personal care attendant—to be inconsistent with subjective symptom testimony); *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling...."); *Castillo v. Dudek*, No. 5:23-CV-05909-EJD, 2025 WL 929412, at *5 (N.D. Cal. Mar. 27, 2025) (discounting subjective symptom testimony where inconsistent with physical examination findings).

As to Plaintiff's remaining arguments, the ALJ was not required to discuss whether

10

1    Plaintiff's obesity exacerbated his pain because, as discussed *supra* pp. 5-7, Plaintiff did not
2    present evidence connecting his obesity to his hip or back pain.  Plaintiff's proposed alternative
3    interpretation of the record is also unavailing.  It is not the Court's role to second-guess the ALJ's
4    reasonable interpretation of Castillo's testimony and the record.  *Burch v. Barnhart*, 400 F.3d 676,
5    679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is
6    the ALJ's conclusion that must be upheld.").

### 2.     Mental Health Symptoms.

The ALJ also noted Plaintiff's mental health symptom testimony—Plaintiff has bipolar disorder, anxiety, and depression, he keeps to himself on certain days, and he takes Zoloft (generic). (*Id.*)  (AR 54.)  The ALJ acknowledged Plaintiff's mental health diagnoses and related symptoms.  (AR 56.)  However, Plaintiff's mental status examinations also found that he had a logical thought process, adequate insight and judgment, normal memory and attention, and other findings consistent with a functional mind.  (AR 56-57.)  The ALJ also noted Plaintiff's daily activities, discussed above.  (AR 58.)  Plaintiff argues that the ALJ erred in evaluating the evidence and points to different evidence supporting the severity of his mental health symptoms.  (Dkt. No. 10, pp. 15-16.)  Plaintiff does not renew this argument in his reply brief.  (Dkt. No. 12.)  Moreover, Plaintiff's argument fails because he does not show that the ALJ erred, he merely contends that the Court should adopt an alternative reading of the record.  As previously discussed, *de novo* review of the record is not within the Court's power.  *See Burch*, 400 F.3d at 679.

In conclusion, the Court finds that the ALJ did not err in evaluating Plaintiff's credibility.

### E.  Weighing Medical Evidence.

In 2017, the Social Security Administration revised its rules for evaluating medical evidence.  *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022).  Under the revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." *Id*. (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844).  "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and

"consistency." *Id*. (quoting 20 C.F.R. § 404.1520c(a)). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520cI(3)). Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. (citing 20 C.F.R. § 404.1520cI(3)(i)-(v)). That said, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id*.

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id*. An ALJ must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R § 404.1520c(b)(2).

The ALJ considered two mental health opinions: a psychological evaluation performed by Dr. Nicole Kirsch, Psy.D. on September 20, 2021 and a consultative psychological evaluation performed by Dr. Aparna Dixit, Psy.D. on October 3, 2022. (AR 57.) After considering both medical opinions, the ALJ concluded that both opinions were "partially persuasive." (AR 59.) Plaintiff contends that "the ALJ erred by failing to find Dr. Kirsch's report the more persuasive of the two and adopting Dr. Dixit's opinion as to Plaintiff's functional impairments." (Dkt. No. 10, p. 21.)

**A. Dr. Aparna Dixit, Psy.D.**

Dixit diagnosed Plaintiff with unspecified anxiety disorder and found that he would have mild to moderate difficulty remembering and carrying out detailed and complex tasks, dealing

12

with the public, and maintaining pace and persistence over two hour increments; but he would have no difficulty with simple instructions or interacting with coworkers. (AR 991.)

The ALJ's finding of Dixit's opinion as "partially persuasive" is supported by substantial evidence. The ALJ summarized Dixit's report, finding that, his "opinion has some support from the examination findings, . . . which showed good performance on many parts of the mental status exam, but some difficulty with concentration." (AR 59.) The ALJ concluded, "considering the record as a whole, including the claimant's treatment records and his testimony, the undersigned has further limited the [Plaintiff] to low stress work . . . ." (*Id.*)

Plaintiff argues that the ALJ erred in adopting Dixit's opinion because it was "internally inconsistent and too brief, superficial, and unsubstantiated by testing to be persuasive." (Dkt. No. 10, pp. 19-20.) The Court disagrees. The ALJ considered both the supportability and consistency of the opinion and provided substantial evidence to both adopt and discount the opinion. (AR 59.)

Given that Plaintiff does not contest the discounting of the opinion, the Court focuses on the evidence supporting the adoption of the opinion. The ALJ sufficiently found Dixit's opinion supported by her evaluation, which included a clinical interview, mental status examination, and record review. (*Id.*; AR 989.) The ALJ recounted the tests performed, (AR 57), fully summarized Dixit's examination findings, (*id.*), compared the test results to her examination findings, (*id.*), and found opinion to "have some support from the examination findings, which showed good performance on many parts of the mental status exam, but some difficulty with concentration, (AR 59). Further, to the extent that Plaintiff disagrees with the consistency of some of Dixit's exam findings and opinion, the ALJ agreed with Plaintiff, finding that the opinion has "*some* support from the examination findings" and rendered the opinion "partially persuasive." (*Id.* (emphasis added).)

Plaintiff also relies on *Mitchell v. Kijakazi*, No. 20-17381, 2022 WL 301551, at *1 (9th Cir. Feb 1, 2022) to argue that the ALJ erred by relying on Dixit's opinion because it "failed to mention or consider Appellant's traumatic history or [Post Traumatic Stress Disorder ("PTSD")]." (Dkt. No. 10, p. 19.) In *Mitchell*, which also involved evaluation of a report by Dixit, the Ninth Circuit held that the ALJ erred by failing to mention the claimant's PTSD despite its "prominence

in the record" stemming from the fact that the claimant "watched her father murder her mother by strangulation when she was just four years old." *Id.* at *1. Here, the ALJ did consider Plaintiff's PTSD, the facts are less startling, and the ALJ did not rely "almost exclusively" on Dixit's report. Therefore, the Court does not find Plaintiff's claim persuasive. Furthermore, to the extent Plaintiff relies on *Mitchell* as general evidence for Dixit's persuasiveness, past reports made under different circumstances do not render Dixit's opinion unpersuasive here.

In conclusion, the Court finds that the ALJ did not err in finding Dr. Dixit's medical opinion "partially persuasive" and incorporating part of her opinion into his RFC findings.

### B. Dr. Nicole Kirsch, Psy.D.

Kirsch diagnosed Plaintiff with PTSD, unspecified bipolar and related disorder, and substance use disorder. (AR 633.) She found that he would have moderate to marked challenges following complex instructions, paying attention, maintaining pace, interacting with the public and coworkers; and he would have extreme difficulty responding to changes, completing a normal workday without intrusive psychological symptoms, and getting to work on time or at all. (AR 634.)

The Court finds the ALJ's conclusion that Kirsch's opinion was "partially persuasive" is also supported by substantial evidence. The ALJ recounted the tests performed, (AR 57), fully summarized Kirsch's examination findings, (*id.*), compared the test results to her examination findings (*id.*), and found her opinion to be partially persuasive, (AR 59). However, the ALJ questioned both the supportability and the consistency of her findings, concluding that "the marked and extreme limitations found by Kirsch are out of proportion to the examination findings discussed above and are not supported by the claimant's treatment notes, which shows waxing and waning of the claimant's mental health symptoms, but overall no more than moderate impairment." (AR 60.)

An ALJ can discount a doctor's opinion where the doctor's assessment of severe limitations was "inconsistent with the medical record" and with the doctor's "own unremarkable mental status examinations." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). Here, the ALJ pointed to evidence supporting the finding that Kirsch's opinions "are out of proportion to the

14

examination findings." For example, the ALJ cited Kirsch's finding that Plaintiff has marked limitations in maintaining attention and concentration for two-hour segments," (AR 57 (citing AR 631)), despite noting that Plaintiff "was able to maintain adequate concentration and attention throughout the evaluation . . . ." (AR 60 (citing AR 635).) Kirsch also found Plaintiff to have marked limitations in "getting along and working with others" and "interacting appropriately with the general public," (AR 57 (citing AR 631)), despite mental examination notes saying that "[h]e maintained a consistently cooperative attitude and was consistently willing to answer questions asked by the examiner; he often went into excessive and sometimes unnecessary detail when answering questions." (AR 60 (citing AR 635).)

The ALJ also discounts Kirsch's opinions by finding that they were not supported by Plaintiff's treatment notes that indicate "overall no more than moderate impairment." (AR 60.) The ALJ provided substantial evidence in support of his finding. He noted that Plaintiff's symptoms wax and wane, and that while treatment notes have shown "sad, depressed mood, blunted and flat affect, depressive cognitions and obsessions, thought blocking and poverty of thought, and guarded demeanor," they also note "euthymic or neutral mood, full affect, clear speech, logical thought process, unremarkable thought content, thought process, and perception, alert or normal attention, appropriate demeanor for situation, appropriate insight and judgment, full orientation, no suicidal ideation, and grossly intact memory." (AR 56 (citing AR 648, 773, 779, 997, 999, 1008, 1010, 1012, 1016, 1017, 1029, 1039, 1042, 1046, 1050, 1054, 1058-59).) To the extent Plaintiff contests the ALJ's interpretation of Plaintiff's treatment notes as showing "overall no more than moderate impairment," (AR 60), "[e]ven when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1110.

Plaintiff relies on *Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353 (N.D. Cal. July 28, 2017) to argue that "[mental status exams] cannot constitute substantial evidence of long-term mental health." (Dkt. No. 10, p. 10.) However, *Moody* does not support Plaintiff's contention that mental status exams *cannot* constitute substantial evidence. Rather, in *Moody*, the court found the ALJ's reliance on "a minor part of these examinations which asks the physician to

15

record Plaintiff's 'mental status' as either 'normal' or 'abnormal,'" to "disregard the medical evidence of Plaintiff's mental impairments" was erroneous because it is "ambiguous" and "not dispositive of Plaintiff's mental health as a whole." *Id.* at *10.

Unlike *Moody*, the ALJ did not rely on an "ambiguous" and a "minor" part of the mental status exam to make his finding of "overall no more than minor impairment." Instead, the ALJ's citations include treatment notes narrating Plaintiff's condition and mental status exam results that specify multiple tested areas of Plaintiff's mental condition. (AR 56 (citing AR 648, 773, 779, 997, 999, 1008, 1010, 1012, 1016, 1017, 1029, 1039, 1042, 1046, 1050, 1054, 1058-59).) Therefore, the Court finds unavailing Plaintiff's argument that the ALJ's use of the mental status exam cannot constitute substantial evidence for discounting Kirsch's opinion.

Furthermore, Plaintiff's argument that the ALJ erred in finding Kirsch's opinions as inconsistent because "Plaintiff regularly reported depression, sought treatment for it, and was prescribed anti-depressant medication," lacks merit because it fails to challenge the severity noted by the ALJ. (Dkt. No. 10, p. 20.)

Finally, Plaintiff argues that the ALJ erred in not finding Kirsch's opinion more persuasive than Dixit's opinion because Kirsch's report was longer and based on more tests. (Dkt. No. 10, p. 20 (citing AR 626).) However, the "kinds and extent of examinations and testing the medical source has performed . . ." is a factor that ALJs "may, but are not required to, explain" when articulating his articulation of medical opinions, and the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c. Therefore, the Court finds Plaintiff's argument unpersuasive in the face of the ALJ's adverse supportability and consistency findings.[3]

In conclusion, the ALJ did not err in finding Kirsch's medical opinion as "partially persuasive" and incorporating part of her opinion into the ALJ's RFC findings.

---

[3] In reply, Plaintiff argues for the first time that, in finding Kirsch's opinion inconsistent, the ALJ "failed to note that Kirsch's testing was mainly in the area of emotional functioning and relied on the results of those tests (i.e., the presence of a trauma history resulting in depression, anxiety, interruptive memories, hypervigilance, irritation, and violence), together with her clinical interview." (Dkt. No. 12, p. 9.) As Plaintiff did not raise this argument in his opening brief, the Court considers it waived. *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("Arguments raised for the first time in a reply brief are waived." (citation omitted)).

### F. Plaintiff's RFC Determination

Plaintiff's arguments concerning the ALJ's error in "failing to find either Plaintiff's chronic pain or obesity to be severe" and therefore "fail[ing] to properly consider them as part of Plaintiff's RFC" are derivative of Plaintiff's arguments at step two. (Dkt. No. 10, p. 21.) Plaintiff's argument of the ALJ's failure to consider Plaintiff's "severe anxiety and symptoms of PTSD" given the "evidence of marked and severe impairments in several work related areas of functioning" is also derivative of the ALJ's weighing of medical evidence. (*Id.* at p. 22.) Having discussed both arguments previously, the Court does not repeat the discussion here. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting step five argument based on the fact that it was derivative of an earlier argument rejected by the court).

Plaintiff also asserts that, in finding Dixit's and Kirsch's opinions both partially persuasive, then ". . . undercutting Dr. Kirsch's opinion[,] . . . the ALJ here failed to base the RFC assessment on anything but his own opinions." (Dkt. No. 12, p. 12.) In support of this argument, Plaintiff cites *Cox v. Kijakazi*, No. C 21-09850 WHA, 2023 WL 4188214 (N.D. Cal. June 23, 2023) and *Corvelo v. Kijakazi*, No. 20-cv-01059-WHA, 2022 WL 1189885 (N.D. Cal. Apr. 21, 2022). In both cases, however, the ALJ rejected uncontested opinions of multiple treating and examining physicians. *Cox*, 2023 WL 4188214, at *7 ("Of particular concern is that the ALJ essentially rejected the opinions of claimant's treating physicians. All of these doctors opined that claimant had a greater degree of mental impairment than the degree of impairment found by the ALJ . . . ."); *Corvelo*, 2022 WL 1189885, at *5 ("The problem lies in the ALJ's rejection of all medical opinions on claimant's mental impairments, leaving none on which the ALJ could rest his conclusion."). Here, Dixit and Kirsch provided conflicting opinions on Plaintiff's mental impairments, and the ALJ found both partially persuasive, adopting elements of both opinions. *See Althoff-Gromer v. Comm'r of Soc. Sec.*, No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) ("The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment.").

To the extent Plaintiff argues that the ALJ "ignored Plaintiff's past trauma, his history of requiring special education services, his very limited education without even a high school

17

1  diploma, and the fact that he has never demonstrated the ability to perform full-time work" in the
2  RFC, the Court disagrees.  (Dkt. 12, p. 10.)  The ALJ specifically considered Plaintiff's history in
3  contemplation of Plaintiff's RFC.  (AR 54 ("[Plaintiff] testified he attended up to the 10th grade
4  and does not have a G.E.D.  He has not [sic] working in the past 15 years."); AR 57 (statement
5  from Kirsch's report) ("The claimant reported that he has suffered from lifelong challenges related
6  to previous trauma exposure, erratic behavior, violence toward others, as well as, severe
7  depression and anxiety.").)

8        Plaintiff's further argues that the ALJ should have specified whether Plaintiff required a
9  sit/stand option or a bariatric chair.  (Dkt. No. 10, p. 21.)  Plaintiff fails to point to evidence in the
10 record—either in his testimony or in the medical evidence— indicating that either option is
11 necessary.  *See Dale S. v. Berryhill*, No. 5:17-CV-00863-KES, 2018 WL 4042818, at *4 (C.D.
12 Cal. Aug. 22, 2018) (rejecting argument that RFC should have included sit/stand option where
13 "not a single medical source opined that Plaintiff needed a sit/stand option").  Thus, Plaintiff fails
14 to show legal error.

15 **CONCLUSION**

16       For the foregoing reasons, the Court DENIES Plaintiff's motion and GRANTS the
17 Commissioner's cross-motion for summary judgment.

18 **IT IS SO ORDERED**.

19 Dated: August 5, 2025

20 _____
21 SALLIE KIM
   United States Magistrate Judge